UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------- X
KIMBERLY ZISCAND, on behalf of herself  :
and all others similarly situated,
                                        :   INDEX NO.  12-CV-1841 (LDW)  (ARL)
           Plaintiff,                   :
                                            **DEFENDANT ARTHUR MURRAY
     -against-                          :   INTERNATIONAL, INC.'S MOTION IN
                                            LIMINE**
ARTHUR MURRAY INTERNATIONAL             :
INC., et al.,
                                        :
           Defendants.
------------------------------------- X

      Defendant Arthur Murray International, Inc. ("Arthur Murray"), by its attorneys Robert L. Folks of Robert L. Folks & Associates and Marc P. Seidler of DLA Piper LLP (US), for its Motion In Limine to exclude the testimony of certain witnesses and the admission of certain documentary evidence at the trial of this matter, states as follows:

## INTRODUCTION

      The Plaintiff in this case, a dance instructor formerly employed at the franchised Arthur Murray Dance Studio in Plainview, New York (the "Plainview Studio"), claims that she worked overtime for which she was not compensated, but she has never produced any evidence of the number of hours that she worked or the damages allegedly suffered as a result of failure to receive over-time pay.  Her employer was The Dance Studio at Plainview, Ltd., a corporation owned and operated by defendants Martin Rebello and Sandra Coelho (collectively, "The Dance Studio Defendants"), which operated the Plainview Studio under a franchise agreement with Arthur Murray. But  Ziscand seeks to recover the allegedly unpaid overtime from Arthur Murray as well as the Plainview Defendants, as an alleged joint employer under the FLSA and the New York Labor Law.

### **Plaintiff Should be Barred from Offering Previously Undisclosed Damages Evidence**

Plaintiff failed to state the amount of damages she is claiming in either her complaint or amended complaint. Plaintiff did not disclose any calculation of damages in her Rule 26 disclosures.

Further, during discovery Defendants requested that Plaintiff provide information about her damages. For example, in their Interrogatories, Arthur Murray and The Dance Studio Defendants made the following request of Plaintiff:

> Interrogatory No. 4: Please identify with specificity all elements of damages, including attorneys' fees, which the Plaintiff is claiming and set forth separately the basis for the computation for each category of damages alleged in the complaint. The computation should be stated separately for Plaintiff Ziscand and each similarly situated individual.

Plaintiff replied to the , requests as follows:

> Interrogatory Response No. 4: At this time, Plaintiff is unable to provide a calculation of the above described damages without conducting further discovery.

On November 21, 2012, counsel for The Dance Studio Defendants wrote to Plaintiff's counsel objecting to this response and demanded that Plaintiff provide the requested information:

> Plaintiff has filed a 25 page complaint containing 123 paragraphs. Plaintiff claims she was not paid overtime for her hours worked. It is incredulous, to say the least, that Plaintiff cannot state or even estimate her alleged damages in this case.
>
> Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure requires a party to provide "a computation of each category of damages claimed" to the other parties. "The party seeking damages must also timely disclose its theory of damages as well as the computation of those damages" *Allstate Ins. Co. v. Nassiri*, 2011 U.S. Dist. LEXIS 79866, *14 citing *24/7 Records, Inc. v. Sony Music Ent., Inc.*, 566 F.Supp. 2d 305, 318 (S.D.N.Y. 2008); *Hoffman v. Construction. Protective*, 541 F.3d 1175 (9th Cir.

-3-

> 2008). Please provide a calculation of the damages allegedly incurred by Plaintiff as well as any of the other putative opt-in Plaintiffs.

On December 12, 2012, counsel for Plaintiff filed the following unverified response:

> Plaintiff is unable to prepare a calculation at the present until Defendants produce the relevant pay and time records, as they are obligated to maintain under Federal and New York Law.

On December 26, 2012, over a year and one-half ago, The Dance Studio Defendants provided Plaintiff's counsel with documents including Plaintiff's timesheets and pay records during the period 2007-2012. On or about January 10, 2013, *after* having been provided with her timesheets and pay records responded to Arthur Murray's supplemental interrogatories stating she was *still* unable to provide any calculation of damages, stating:

> At this time Plaintiff Ziscand is unable to provide a calculation of the above-described damages without providing further discovery.

To date Plaintiff has still not provided Defendants with any calculation of damages. Even on July 7, 2014 when asked directly by the Court to state what Plaintiff's damages might be, counsel said he could not even estimate them!

The failure to provide any information on damages precludes Plaintiff from offering any information on this issue. But because this case involves only potential money damages, the complaint must be dismissed. *See, e.g., 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (theory of damages precluded by plaintiff's failure to make mandatory initial disclosure); *Richmond v. Gen. Nutrition Ctrs., Inc.*, 2012 WL 762307, at *5 (S.D.N.Y. 2012) (court would preclude at trial any damages-related computations and supporting documents not produced by plaintiffs because non-production was neither substantially justified nor harmless); *Briese Lichttechnik Vertriebs GmbH v. Langton*, 2011 WL 280815, *11 (S.D.N.Y. 2011) (precluding defendants from "utilizing, either on summary judgment or at trial,

any documents not produced to plaintiffs during the specified discovery period"); *Rienzi and Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, 2011 WL 1239867, *3 (E.D.N.Y. 2011) (holding Rule 26(a)(1)(A)(iii) required dilatory party to disclose category of damages "even if a definite figure was not available").

Plaintiff has not offered any rational explanation for her blatant violation of the rules. As such, she is precluded from offering any evidence of damages.. *See Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 WL 3341837, *2 (S.D.N.Y. 2010) (failure to provide information on damages precludes plaintiff from recovering same); *Hoffman v. Constr. Protection Servs.*, 541 F.3d 1175 (9th Cir. 2008) (motion to exclude evidence relating to damages granted based on plaintiff's failure to disclose damages in FLSA collective action).

Notwithstanding that trial is now just over a week away, and Plaintiff has a continuing obligation under Fed. R. Civ. P 26 (e) (1) to timely supplement incomplete discovery responses, Plaintiff has never furnished a damages calculation or the specific information from which such a calculation can be made, which is required in the Second Circuit. Moreover, Fed. R. Civ. P. 37 expressly prohibits the use at trial of any information that a party fails to provide as required by Rule 26 (a) or (e), unless such failure is substantially justified or is harmless, which this clearly is not. Defendants would be seriously prejudiced if Plaintiff were permitted to give testimony as to her damages that has not been previously disclosed, or to put before the jury documentary evidence that has not been produced to the Defendants in sufficient time to obtain rebuttal evidence. Accordingly, Plaintiff should be barred from offering evidence of damages other than that referenced above to the effect that Plaintiff cannot even estimate the amount of her damages, which Arthur Murray submits is manifestly insufficient to go to the jury.

-5-

### Plaintiff Should Be Barred From Offering Evidence About The Hours She Claims To Have Worked

The Dance Studio Defendants also served Interrogatories upon Plaintiff requesting information detailing the amount, the pay period, the relevant dates, the job, the jobsite, and all applicable names, dates and circumstances when Plaintiff was not properly paid.). Plaintiff refused to provide this information claiming it was "harassing"! . Plaintiff made a similar stone wall objection to Arthur Murray's request for production of documents relating to her compensation. After counsel objected, Plaintiff provided an unverified response providing no detail at all to her claims of overtime worked merely stating that Plaintiff was "regularly" not paid overtime, she "typically" worked certain hours, and "occasionally" worked a Sunday. Plaintiff was asked at her deposition about numerous weeks and in each week she admitted she was not entitled to overtime. *See, e.g.*, Pl. Dep., Ex. 28 at p. 102, Ex. 5 p. 00003; *id*. at p. 116, Ex. 5 p. 00120; *id*. at p. 127, Ex. 5 p. 00120; *id*. at p. 128, Ex. 5 p. 00210; *id.* at p. 128-129, Ex. 6 p. 00288; *id.* at p. 136, Ex. 6 p. 00411; *id.* at p. 137, Ex. 6 p. 00428; *id.* at p. 142, Ex. 6 p. 00443; *id.* at p. 144, Ex. 6 p. 01448). On one week only Plaintiff testified she "thought" she was entitled to overtime but when asked how much she claims she was owed, she stated that she did not know!

> Q   I'm asking you how much more money do you think you are entitled to for this particular week?
> A   Oh, that I don't know. I can't come up with an answer for that.

The decisions in *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), *Nakahata v. New York-Presbyterian Health Sys. Inc.*, 2013 WL 3743152 (July 11, 2013) and *Dejesus v. HF Mgmt. Servs. LLC*, 2013 WL 3970049 (2d Cir. Aug. 5, 2013) make clear that Plaintiff must come forward with evidence that she worked overtime in specific workweeks. Plaintiff does not dispute that she failed to provide this information. In light of her

failure to articulate the weeks she claimed she was not paid overtime, the Plaintiff should be precluded from testifying about the same at trial.

### Plaintiff Should be Barred from Offering the Testimony of the Opt-in Plaintiffs

Apart from the question of whether Plaintiff has been damaged, discussed above, the principal issue in this case as it relates to Arthur Murray is whether *it* may be liable under the FLSA and New York Labor law for overtime pay, assuming Plaintiff could prove that The Dance Studio Defendants did not properly pay her. In the Second Circuit, courts apply the so-called "economic reality test" whereby they evaluate the "economic reality" of a particular employment situation utilizing four principal factors: whether the alleged employer (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 n.1 (2d Cir. 1984)

Arthur Murray does not know specifically what witnesses and documentary evidence Plaintiff will seek to introduce in support of her "joint employer" claim against Arthur Murray because she never tendered a draft pre-trial order as contemplated by the Court's Individual Motion Practice and Rules and the Court's Pre-Trial/Trial Rules. Although the specific identity of Plaintiff's trial witnesses and exhibits remains something of a mystery, based on her response to Arthur Murray's pending motion for summary judgment and her examination of Arthur Murray personnel at their depositions, Arthur Murray believes that Ziscand intends to clutter the record with extraneous evidence relating to the franchisee-franchisor relationship between Arthur Murray and its franchisees and to employees of other dance studios owned by other franchisees, all unrelated to the four-factor Carter test

Although the focus of the test is specific and narrow, and the underlying allegations of under payment of wages to Plaintiff—and only to plaintiff—are similarly narrow, Plaintiff proposes in its eleventh hour witness/ exhibit list to conduct a three-ring circus at 940 Federal Plaza. First, Ziscand seeks to call 5 "opt-in plaintiffs" who were dance instructors in various Arthur Murray dance studios located on Long Island, to testify as to *their* work schedules and compensation and whatever limited contact *they* had with Arthur Murray in the operation of the studios that employed them. The opt-in plaintiffs are Vivian Kim, Mary Cornetta, Sara Miller-Hornick, Mario Moreta, and Nicole DiNonno. Except for Nicole DiNonno, who briefly worked at the Plainview studio, none of the opt-in plaintiffs were employed by The Dance Studio Defendants. Therefore, they could not testify as to the *Plaintiff's* work schedule, method and rate of compensation, or overtime compensation, nor could they testify as to what role, if any, Arthur Murray played in hiring and firing employees, setting work schedules and other conditions of employment, determining the method and rate of compensation, or maintaining the employment records of dance instructors at the Plainview studio, including the Plaintiff.

Because these potential witnesses do not have any personal knowledge of either the hours Ziscand worked and whether she was properly compensated for them, or the relationship between Arthur Murray and the owners of the Plainview studio with respect to the four-part test prescribed by the Second Circuit in *Carter*, such testimony would not be probative of any issue in controversy in this lawsuit. To the extent that Plaintiff offers the testimony of other dance instructors who claim that they worked overtime without proper compensation in other studios than the Plainview Studio, owned by other franchisees, such testimony could only serve to confuse the jury and prejudice defendants. Such testimony would be cumulative and would unduly prolong the trial of a straight-forward FLSA claim by a single employee. Accordingly,

such other dance instructors formerly employed in other Arthur Murray dance studios than the one owned by defendants in this case, should be excluded as witnesses.[*]

### Plaintiff Should be Barred from Offering Irrelevant Documentary Evidence of Franchise policies and Procedures Unrelated to Arthur Murray's Alleged Control Over the Carter Factors

As noted above, Plaintiff also has not shared with defendants what documents she will seek to introduce into evidence at the trial of this case. But in her depositions of Arthur Murray's president John Kimmins and Arthur Murray's director of studio services, Wayne Smith, Ziscand questioned the witnesses at length about scores of documents relating to Arthur Murray policies, procedures, internal communications and promotional materials completely unrelated to Ziscand's –or any dance instructor's–hours or compensation, or to the four-part test to determine status as an employer. These include, for example, Arthur Murray written policies concerning procedures for obtaining a franchise, a guide to awarding franchises, requirements for the physical plant of an Arthur Murray franchised dance school, the requirement that a franchisee may appoint a manager to operate a studio under certain circumstances, criteria for non-renewal of franchises, attendance at area and regional meetings, a policy concerning the presentation of awards for franchisee sales activity and performance, the requirement that royalties be paid on receipts from students for services performed by outside consultants, the guidelines for retaining the services of certified examiners to test students, policies prescribing guidelines for the preparation of various reports concerning studio financial performance and their submission to Arthur Murray, incentives offered to franchisees who open additional studios, and so forth. In addition, they have identified advertising and promotional materials which refer to dance instructors in franchised studios as "our instructors" or "Arthur Murray instructors."

---

[*] This case was filed as a class action. If the Court were trying a class action, perhaps the testimony of these witnesses would be admissible, but that is not the case. In fact, Plaintiff never obtained class certification.

-9-

This is not an apparent agency case where a plaintiff has sued Arthur Murray for holding out a franchisee's dance teacher as Arthur Murray's agent—it is an FLSA wage and hours case. None of these documents relate to the four-part test to determine whether Arthur Murray was Ms. Ziscand's employer, and none of them evidence control by Arthur Murray of the management, supervision and oversight of the hiring, firing, scheduling or compensation of franchisees' employees—specifically, Kimberly Ziscand. Documents such as these, that merely show that Arthur Murray exercised the controls that franchisors typically exercise over franchisees to ensure uniformity and consistency of the products and services offered by franchisees under its brand, are not relevant because "[e]xercising quality control by having strict standards and monitoring compliance with those standards does not constitute supervising and controlling employees' work conditions." *See, e.g., Godlewska v. HDA*, 916 F.Supp.2d 246, 262 (E.D.N.Y. 2013). Accordingly, so as to avoid prolonging the trial of a very simple case, and to avoid an accumulation of irrelevant evidence and jury confusion, the Court should exclude evidence of Arthur Murray policies, procedures and communications that do not relate directly to the power to hire and fire employees, the supervision and control of work schedules or conditions of employment, the determination of the rate and method of payment of compensation and the maintenance of the employment records.

EAST\79117179.1

-10-

Dated: Chicago, Illinois
      July 11, 2014

Respectfully submitted,

By: /s/ Marc P. Seidler

Marc P. Seidler (MPS 1597)
Attorney for Defendant Arthur Murray International, Inc.
203 N. LaSalle St., Ste. 1900
Chicago, Illinois 60601
(312) 368-4000
marc.seidler@dlapiper.com

Robert L. Folks (RLF 8773)
Robert L. Folks & Associates, LLP
510 Broad Hollow Road, Suite 305
Melville, NY 11747
(631) 845-1900
Fax: (631) 845-8779
lawfolks@aol.com

EAST\79117179.1